# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ODILON ORTIZ,<br><br>                Plaintiffs,<br><br>   v.<br><br>VICTOR LOPEZ, et al.,<br><br>                Defendants. | 1:08cv0361 DLB<br><br>ORDER GRANTING DEFENDANT'S<br>MOTION FOR SUMMARY JUDGMENT<br><br>(Document 24) |

Defendant City of Orange Cove ("Defendant" or the "City") filed the instant motion for summary judgment, or summary adjudication in the alternative, on November 13, 2009. The matter was heard on January 15, 2010, before the Honorable Dennis L. Beck, United States Magistrate Judge. H. Ty Kharazi appeared on behalf of Plaintiff Odilon Ortiz ("Plaintiff"). James McBrearty appeared on behalf of Defendant.

## BACKGROUND

Plaintiff filed this wrongful termination action against Defendants Victor Lopez and the City of Orange Cove on January 25, 2008, in the Fresno County Superior Court. Defendants removed the action to this Court on March 12, 2008, on the basis of this Court's federal question jurisdiction.

On March 6, 2009, the Court granted the parties' stipulation to dismiss Victor Lopez with prejudice.

Defendant filed the instant motion for summary judgment, or summary adjudication in the alternative, on November 13, 2009. Plaintiff opposed the motion on December 31, 2009, and Defendant filed a reply on January 11, 2010.[1]

**FACTUAL ALLEGATIONS IN THE COMPLAINT**

In his verified complaint, Plaintiff alleges that he was hired by Defendants as an interim finance director in August 2005. On November 15, 2005, the position became permanent. Throughout his employment, he received no criticism and his work was often praised.

After finding evidence of embezzlement by a city employee, Plaintiff began an internal audit of the City. The audit resulted in the discovery of many discrepancies, including discrepancies related to Defendant Lopez, who was the Mayor during all relevant times, and his sons, as well as issues with Defendant Lopez's compensation. Plaintiff also discovered issues related to bidding for supplies and services, noncompliance of independent contractors and the City's failure to bill certain individuals for utility services. When Plaintiff informed his supervisor, William Little, of the issues, he was generally told not to take any action.

In February 2007, Defendant Lopez spoke to Plaintiff and objected to Plaintiff's request for a revenue/expense projection for a Cinco de Mayo celebration. Defendant Lopez questioned Plaintiff's contacts with Counsel Member Glenda Hill and "reminded" Plaintiff that he only needed two votes from the City Council to dismiss Plaintiff. Defendant Lopez denied that his statement was a threat and confirmed that Plaintiff was doing a good job.

---

[1] In his opposition, Plaintiff contends that the notice of motion does not meet the requirements of Rule 7(b) because it "does not specify with requisite specificity which claim should be dismissed. Contrary to Plaintiff's belief, the notice of motion is sufficient.

Plaintiff also requests that the Court not consider Defendant's reply, which was filed a day late. At the hearing, Plaintiff indicated that he did not need additional time to prepare for argument. In the interests of deciding motions on the merits and because of the lack of prejudice, the Court will consider Defendant's reply.

While continuing to perform his job, Plaintiff discovered evidence of key employees incorrectly charging the City for personal expenses and failing to refund money spent. Some of the identified employees were relatives of Defendant Lopez, including his two sons. Plaintiff was told not to take any corrective action and alleges that Defendants prevented him from investigating individuals who were stealing money from the City.

Plaintiff began to set up meetings with various vendors to investigate the improper return of merchandise. On June 27, 2007, prior to conducting his meetings, Plaintiff was terminated. He alleges that he was terminated in retaliation for reporting illegal activities.

On November 26, 2007, he filed a tort claim with the City pursuant to California Government Code section 950, et seq. The claim was rejected on December 12, 2007.

Based on these facts, Plaintiff alleges causes of action for (1) wrongful termination in violation of public policy; (2) wrongful termination for whistleblowing, in violation of California Labor Code section 1102.5; (3) misrepresentation; (4) violation of 42 U.S.C. section 1983; (5) defamation; (6) breach of the implied covenant of good faith and fair dealing; (7) negligence and (8) intentional infliction of emotional distress.

As Defendant Lopez has been dismissed, the parties agree that the causes of action for misrepresentation, defamation and intentional infliction of emotional distress are moot.

## **UNDISPUTED MATERIAL FACTS**

Plaintiff was employed by the City, a public entity, as Finance Director beginning in August 2005. Verified Complaint, ¶¶ 2, 4 and 11. When he was hired, he was hired as "interim" Finance Director. Declaration of Odilon Ortiz ("Ortiz Dec."), ¶ 4. Months later, he was promoted to "permanent" Finance Director. Ortiz Dec., ¶ 4. He did not have an employment contract with the City. Deposition of Odilon Ortiz ("Ortiz Dep."), p. 56 at 3-5.

City Ordinance 2.08.090(B) provides that the City Treasurer "shall hold office at and during the pleasure of the City Council." Declaration of Alan Bengyel ("Bengyel Dec."), ¶ 4. City Ordinance 2.40.040(C) provides that the office of City Treasurer is exempt from the civil service system and serves at the Council's pleasure. Bengyel Dec., ¶ 6.

| 1  | Plaintiff was terminated from his position on June 27, 2007. Verified Complaint, ¶ 29.
| 2  | Prior to the Council vote on his termination, he was afforded a public hearing. Ortiz Dep., p. 61.
| 3  | Plaintiff spoke at the hearing on his own behalf, as did some members of the public. Ortiz Dep.,
| 4  | p. 61. The City voted 3-1 to terminate Plaintiff. Ortiz Dep., p. 62. Plaintiff was told he was
| 5  | terminated as a result of his perceived bad attitude and negative leadership. Ortiz Dep., p. 382.
| 6  | Plaintiff's complaint does not allege that he made any complaint under California Labor
| 7  | Code section 1102.5 with the California Labor Commissioner. Verified Complaint, ¶ 33.

## LEGAL STANDARD

Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). "If the party moving for summary judgment meets its initial burden of identifying for the court those portions of the material on file that it believes demonstrates the absence of any genuine issues of material fact," the burden of production shifts and "the non moving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" T.W. Electric Service, Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (quoting Fed.R.Civ.P. 56(e)). As to the specific facts offered by the nonmoving party, the court does not weigh conflicting evidence, but draws all inferences in the light most favorable to the nonmoving party. Id. at 630-31.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that

4

the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56 (c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd,* 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

**DISCUSSION**

A.   First Cause of Action - Wrongful Termination in Violation of Public Policy

In Plaintiff's first cause of action, he alleges that he was terminated "for trying to protect the residents of the City of Orange Cove by exposing and attempting to have the City correct illegal acts." Verified Complaint, ¶ 38. He contends that this was a violation of the public policy

5

of the State of California, as codified in California Labor Code section 1102.5.[2] He also contends that at all times relevant, "42 U.S.C. § 1981 (guaranteeing equal rights under the law) and the Fourteenth Amendment (guaranteeing equal protection of the laws) were in full force and effect and binding on defendants." Verified Complaint, ¶ 37.

An employer's broad authority to terminate at-will employees can be limited by statute or considerations of public policy. Tameny v. Atlantic Richfield Co., 27 Cal.3d 167 (1980). When an employer's discharge of an employee violates fundamental principles of public policy, the discharged employee may maintain a tort action against the employer. Id. at 176. A Tameny cause of action must be "carefully tethered to fundamental policies that are delineated in constitutional or statutory provisions." Gantt v. Sentry Insurance, 1 Cal.4th 1083, 1095 (1992). A Tameny action for wrongful discharge can only be asserted against the employer. Miklosy v. Regents of the Univ. of Cal., 44 Cal.4th 876, 900 (2008).

Defendant argues that Plaintiff cannot maintain a Tameny claim against a public entity. Miklosy v. Regents of the Univ. of Cal., 44 Cal.4th 876 (2008). In Miklosy, the court held that the Government Tort Claims Act "abolishes all common law or judicially declared forms of liability for pubic entities. . ." When plaintiffs attempted to bring a Tameny claim against the Regents of the University of California, the court held that because such a claim is a common law claim, it is precluded by the Tort Claims Act. Miklosy, 44 Cal.4th at 900; see also Creighton v. City of Livingston, 628 F.Supp.2d 1199 (E.D. Cal. 2009) (finding that Miklosy bars the common law tort of wrongful termination in violation of public policy against the City of Livingston).

The Court finds Miklosy controlling. Plaintiff attempts to avoid this result by characterizing his claim as not one under common law, but one brought under 42 U.S.C. § 1981 in conjunction with Labor Code section 1102.5. He therefore argues that it can be asserted against a public entity because it is a statutory claim. That Plaintiff cites these sections in his cause of action, however, does not change the nature of the claim as a common law tort. Instead,

---

[2] Section 1102.5 prohibits employers from making any rule preventing an employee from disclosing illegal activity and prohibits retaliation for reporting illegal activity.

6

relating the common law claim to a statute is a necessity of the tort itself. Gantt, 1 Cal.4th at 1095.

Plaintiff's first cause of action for wrongful termination in violation of public policy against Defendant, a public entity, is barred by Miklosy. Summary judgment is therefore GRANTED.

B.     Second Cause of Action- Violation of California Labor Code Section 1102.5

Plaintiff's second cause of action is brought under Labor Code section 1102.5(b), which provides:

> (b)     An employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation.

Prior to bringing an action under section 1102.5, a plaintiff is required to exhaust all administrative remedies. Campbell v. Regents of the Univ. of Cal., 35 Cal.4th 311, 317 (2005); Cal. Labor Code § 98.7. In Creighton v. City of Livingston, 628 F.Supp.2d 1199, 1221 (E.D.Cal. 2009), this Court examined whether a plaintiff, who alleged compliance with the California Tort Claims Act and "all applicable administrative remedies," sufficiently exhausted his remedies so as to allow him to proceed under section 1102.5. The Court cited its prior holding in Neveu v. City of Fresno, 392 F.Supp.2d 1159, 1180 (E.D.Cal.2005), where it dismissed a section 1102.5 claim for plaintiff's failure to exhaust by filing a claim with the Labor Commissioner. Even though the plaintiff in Creighton alleged exhaustion, the Court held that filing a Tort Claims Act claim does not satisfy the purposes of exhaustion for a section 1102.5 claim. Creighton, 628 F.Supp.2d at 1221-1222. Instead, the requirement to exhaust administrative remedies under section 1102.5 is distinct from the mandate under the Tort Claims Act to file a claim with the public entity. Id. at 1222; Bowman v. Yolo County, 2008 WL 3154691 (E.D. Cal. 2008).

Pursuant to Creighton, Defendant contends that Plaintiff's allegation that he filed a tort claim with the City is not sufficient to satisfy the exhaustion requirement under section 1102.5.

In opposition, Plaintiff argues that his claim under section 1102.5(b) is based on the underlying alleged termination in violation of public policy. As such, Plaintiff contends that it is

7

not subject to exhaustion requirements. Contrary to his characterization, this is a statutory claim for retaliatory discharge. Although the statute "reflects the broad public policy interest in encouraging workplace whistle-blowers to report unlawful acts without fearing retaliation," it remains a statutory, not common law, claim. Colores v. Board of Trustees, 105 Cal.App.4th 1293, 1301 n. 1 (2003) (internal citations omitted). Indeed, the cases he relies on in support of his argument involve <u>Tameny</u> claims, not claims brought under section 1102.5. See eg. Stevenson v. Superior Court, 16 Cal.4th 880 (1997) (finding that a <u>Tameny</u> claim based on FEHA's prohibition against age discrimination is not subject to FEHA's exhaustion requirements).[3]

Plaintiff next argues that Labor Code section 98.7, which sets out the procedure for filing a complaint with the Labor Commissioner, does not apply to his action. Specifically, he argues that exhaustion under section 98.7 is only mandatory in discrimination claims, not whistleblowing claims. Both the statutory language and case law, however, prohibit such a reading.

Section 98.7(a) specifically states, "Any person who believes that he or she has been **discharged or otherwise discriminated against** in violation of any law under the jurisdiction of the Labor Commissioner may file a complaint with the division within six months after the occurrence of the violation." Plaintiff suggests that the Labor Commissioner is ill-equipped to investigate issues of financial impropriety, but the allegations of financial impropriety are secondary to the core issue of retaliatory discharge, an issue that falls squarely within the Labor Commissioner's jurisdiction and expertise. See Cal. Labor Code § 98.6(a) (claims pursuant to section 1102.5 are brought under the jurisdiction of the Labor Commissioner).

Case law also renders Plaintiff's interpretation unpersuasive. Courts in this District have repeatedly required exhaustion under section 98.7 in section 1102.5 retaliatory discharge actions. For example, <u>Creighton</u> involved a Public Works Director who alleged retaliatory discharge under section 1102.5 based on his belief that he was terminated for raising issues related to pollution of the city's water supply. Defendant moved to dismiss the section 1102.5 claim based on failure to sufficiently allege exhaustion under section 98.7. The Court concluded that the plaintiff was

---

[3] The Court notes that in citing <u>Stevenson</u>, Plaintiff includes certain language in a block quote that does not appear in the original quote. Plaintiff is strongly cautioned against misrepresenting authority to the Court.

8

required to exhaust administrative remedies pursuant to section 98.7 prior to bringing an action under section 1102.5. Plaintiff's allegation that he exhausted "all applicable administrative remedies" was a "conclusory allegation" insufficient to satisfy the exhaustion requirement. Creighton, 628 F.Supp.2d at 1222.

Creighton is not an anomaly. In Neveu v. City of Fresno, the Court held that a police officer who alleged retaliatory discharge under section 1102.5 was required to bring a complaint before the Labor Commissioner prior to bringing suit. Although the Court noted that neither section 98.7 nor 98.6 provided the Labor Commissioner with exclusive jurisdiction, it relied on Campbell, supra, in holding that a litigant seeking damages under section 1102.5 is required to exhaust administrative remedies before the Labor Commissioner prior to filing a judicial action. Neveu v. City of Fresno, 392 F.Supp.2d 1159, 1180 (E.D.Cal. 2005).

Similarly, Bowman v. Yolo County involved plaintiffs who filed suit under section 1102.5, contending that they were terminated after disclosing purported illegal activity at the Yolo County Housing Authority. In opposing a motion to dismiss, plaintiffs argued that they were not required to exhaust under section 1102.5, or alternatively, that their tort claim satisfied exhaustion. The Court granted the motion to dismiss, finding that exhaustion under section 98.7 was required and that a tort claim was a separate, additional prerequisite. Bowman v. Yolo County, 2008 WL 3154691, *1-2 (E.D.Cal. 2008); see also Hall v. Apartment Inv. and Mgmt. Co., 2008 WL 5396361 (N.D.Cal. 2008) (exhaustion of the administrative remedies prescribed in section 98.7 applies to section 1102.5).

Insofar as Plaintiff contends that his tort claim was sufficient because he merely has to exhaust in *some* manner, his argument is without merit. Creighton and Bowman specifically found that a tort claim was insufficient to satisfy the exhaustion requirement under section 98.7. Creighton, at 1221; Bowman, at *2. Plaintiff's citation to Paterson v. California Dept. of General Serv. does not change this result. There, the Court determined that the plaintiff's filing with the DFEH and EEOC sufficed to satisfy exhaustion under 1102.5. Although the Court disagreed with Neveu's interpretation of Campbell as requiring that remedies before the Labor Commissioner specifically be exhausted, it nonetheless emphasized that the plaintiff had resorted

9

to some form of administrative remedies by filing with the DFEH and EEOC. Patterson v. California Dept. of General Serv., 2007 WL 756954 (E.D.Cal. 2007); see also Lund v. Leprino Foods Co., 2007 WL 1775474 (E.D. Cal. 2007) (administrative remedies must be exhausted even though filing a complaint with the Labor Commissioner is neither mandatory nor exclusive). Here, although the Court finds the authority in Neveu and Creighton persuasive, it remains that Plaintiff has not filed *any* administrative complaints.

Plaintiff's second cause of action under section 1102.5 is barred for failure to exhaust administrative remedies. Summary adjudication is therefore GRANTED.

C. Fourth Cause of Action - 42 U.S.C. § 1983

In Plaintiff's fourth cause of action, he alleges that:

60. Defendant Victor Lopez, acting as Mayor of Orange Cove, caused Plaintiff to be deprived of his right to due process and right to employment by wrongfully terminating Plaintiff's employment.

61. Defendant Victor Lopez, acting as Mayor of Orange Cove, made false and misleading statements about Plaintiff that were published to the public at large.

The City contends that it is entitled to judgment on the section 1983 claim because (1) Plaintiff had no entitlement to support a claim for procedural due process; and (2) Plaintiff has not sufficiently alleged facts to support municipal liability.

To establish a due process violation, a plaintiff must show that he has a protected property interest under the Due Process Clause and that he was deprived of the property without receiving the process that he was constitutionally due. Levine v. City of Alameda, 525 F.3d 903, 905 (9th Cir. 2008). To create a constitutionally property interest in continued employment, "the law must remove the decision to grant the benefit from agency discretion." Peacock v. Board of Regents of Univ. and State Colleges of Arizona, 510 F.2d 1324, 1327 (9th Cir. 1975). "A state law which limits the grounds upon which an employee may be discharged, such as conditioning dismissal on a finding of cause, creates a constitutionally protected property interest." Dyack v. Commonwealth of Northern Mariana Islands, 317 F.3d 1030, 1033 (9th Cir. 2003) (internal

citation omitted). "Where, however, a state employee serves at will, he or she has no reasonable expectation of continued employment, and thus no property right." Id.

In the instant case, it is undisputed that Plaintiff was terminated by a 3 to 1 vote of the City Council. It is also undisputed that he had no contract of employment with the City. Plaintiff was therefore an at will employee who served at the discretion of the City Council. Indeed, City Ordinance 2.08.090(B) provides that the City Treasurer "shall hold office at and during the pleasure of the City Council." Bengyel Dec., ¶ 4. City Ordinance 2.40.040(C) provides that the office of City Treasurer is exempt from the civil service system and serves at the Council's pleasure. Bengyel Dec., ¶ 6.

Plaintiff disputes whether the terms Financial Director and City Treasurer are used interchangeably and contends that he was the Financial Director. While it appears that Plaintiff is attempting to establish that he was a civil service employee and therefore may have had a protected property interest in continued employment, there is no evidence to suggest such a finding. Whether the titles are interchangeable or not, then, is a distinction without a difference.

The Court also notes that although Plaintiff was an at will employee who was terminated at the discretion of the City Council, he was afforded a public hearing and an opportunity to be heard nonetheless. Plaintiff was represented by counsel at the hearing and spoke on his own behalf. He was also permitted to have witnesses speak in his favor.

To the extent Plaintiff attempts to avoid summary adjudication on the section 1983 claim by suggesting it is a freedom of speech issue, he cannot do so. Plaintiff's First Amendment argument fails for a number of reasons, the most obvious of which is a basic procedural tenet. The issues on summary judgment are framed by the complaint. Indeed, the issues in the complaint guide the parties during discovery and put the defendant on notice of what evidence is necessary to defend against the allegations. For these reasons, a plaintiff cannot oppose summary judgment based on a new theory of liability because it would essentially blind side the defendant with a new legal issue after the bulk of discovery has likely been completed. See eg. Coleman v. Quaker Oats Co., 232 F.3d 1271, 1292-1293 (9th Cir. 2000) (where plaintiff did not include legal theory in

complaint and did not identify the theory at any time prior to summary judgment, she could not rely on the theory for the first time during summary judgment).

Plaintiff's complaint does not assert a First Amendment freedom of speech theory. There is no indication that Plaintiff raised a First Amendment issue during discovery or communicated the theory to the City in any way. Accordingly, Plaintiffs' First Amendment issue is not properly before the Court. See Klein v. Boeing Co., 847 F.Supp. 838, 844 (W.D.Wash.1994) ("Klein never asserted this claim prior to his opposition to Boeing's motion for summary judgment, nor has he moved to amend his complaint to add such a claim. Thus, this claim is not properly before the court.")

Even if this Court could consider Plaintiff's First Amendment argument, it is baseless. It is well settled that the state may not abuse its position as employer to stifle "the First Amendment rights [its employees] would otherwise enjoy as citizens to comment on matters of public interest." Eng v. Cooley, 552 F.3d 1062, 1070 (9th Cir.) (quoting Pickering v. Bd. of Educ., 391 U.S. 563, 568 (1968)). A five-step test assists in balancing the "interests of the [public employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." Id. The court should determine (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech. Eng, at 1070. Failure to meet one of the steps concludes the inquiry. Huppert v. City of Pittsburg, 574 F.3d 696, 703 (9th Cir. 2009).

"Statements are made in the speaker's capacity as citizen if the speaker had no official duty to make the questioned statements, or if the speech was not the product of performing the tasks the employee was paid to perform." Eng, at 1071 (internal citations omitted).

Here, Plaintiff was the Finance Director for the City and was responsible for the day-to-day financial operations. It is undisputed that he voiced his concerns in his capacity as a public

employee, not as a private citizen, and Plaintiff presents no evidence to the contrary. He contends that his speech is protected because it addressed a matter of public concern, but as noted above, that is only one factor in the analysis.

The Court therefore finds that Plaintiff did not have a protected property right to continued employment.[4] The City's motion for summary judgment is GRANTED.

D. <u>Sixth Cause of Action- Breach of the Implied Covenant of Good Faith and Fair Dealing</u>

In his sixth cause of action, Plaintiff alleges that as a result of the "employment relationship, the expressed and implied promises made in connection with that relationship and the acts, conduct and communications resulting in these implied promises," Defendant promised to act in good faith toward, and deal fairly with, Plaintiff. This included Defendant's promise not to terminate Plaintiff without a "fair and honest cause, regulated by good faith on the defendant employer's part." Verified Complaint, ¶ 80.

The implied covenant is designed to protect the reasonable expectations of the parties based on their mutual promises. "The covenant of good faith is read into contracts in order to protect the express covenants or promises of the contract, not to protect some general public policy interest not directly tied to the contract's purposes." Foley v. Interactive Data Corp., 47 Cal.4th 654, 690 (1988). Prior to determining whether the covenant was breached, the employee must prove that the employer promised the benefits sought. "The prerequisite for any action for breach of the implied covenant of good faith and fair dealing is the existence of a contractual relationship between the parties, since the covenant is an implied term in the contract." Smith v. City and County of San Francisco, 225 Cal.App.3d 38, 48 (1990). In an at-will employment relationship, there is no agreement to terminate only for cause. Therefore, the implied covenant, acting alone, cannot be read to impose such a duty. Guz v. Bechtel Nat. Inc., 24 Cal.4th 317, 350 (2000).

Defendant contends, and the Court agrees, that Plaintiff did not have a contract of employment and therefore has no rights under an implied covenant of good faith and fair dealing.

---

[4] Given this finding, the Court need not reach the issue of whether Plaintiff sufficiently alleged facts to support municipal liability under Monell v. Dep't Soc. Serv., 436 U.S. 658, 691 (1978).

Miller v. State of California, 18 Cal.3d 808, 813-814 (1977) (It "is well settled in California that public employment is not held by contract but by statute and that, insofar as the duration of such employment is concerned, no employee has a vested contractual right to continue in employment beyond the time or contrary to the terms and conditions fixed by law.") "Civil service employees cannot state a cause of action for breach of contract or breach of the implied covenant of good faith and fair dealing." Scott v. Solano County Health and Social Services Dept., 459 F.Supp.2d 959, 967 (E.D. Cal. 2006).

Plaintiff's only 'evidence' of a contract is his statement that he was "told as long as [he] does] a good job, [he] would remain employed. . ." Declaration of Odilon, ¶ 3. Plaintiff's vague statement is insufficient to create a genuine issue of material fact.

The City is therefore entitled to summary judgment on the sixth cause of action for breach of the implied covenant of good faith and fair dealing.

E.  Seventh Cause of Action - Negligence

Plaintiff's seventh cause of action alleges that Defendant negligently supervised him by failing to advise him of deficiencies in his performance, failing to adequately warn him before termination, and failing to give him constructive criticism and assistance to improvement his performance. He also alleges that Defendant negligently hired and retained supervisors who improperly supervised Plaintiff, negligently terminated his employment by negligently evaluating his performance, failing to conduct an adequate investigation of his performance, and failing to consider their duties towards Plaintiff.

The City seeks summary judgment on this issue because (1) Plaintiff's tort claim was insufficient; and (2) his claim is barred by the exclusivity provisions of Workers' Compensation.

1.  *Tort Claim Sufficiency*

California Government Code section 910 requires, among other things, that the claim show a "general description of the indebtedness, obligation, injury, damage or loss incurred so far as it may be known at the time of presentation of the claim." The complaint must disclose sufficient information to enable the public entity adequately to investigate the merits of the claim so as to settle the claim, if appropriate. County of Los Angeles v. Superior Court, 159

Cal.App.4th 353 (2008). While the claim need not specify each particular act or omission, a subsequent complaint cannot be based on "an entirely different set of facts." Stockett v. Assoc. of California Water Agencies Joint Powers Ins. Auth., 34 Cal.4th 441 (2004). "Only where there has been a 'complete shift in allegations, usually involving an effort to premise civil liability on acts or omissions committed at different times or by different persons than those described in the claim,' have courts generally found the complaint barred." Id., at 447 (internal citations omitted).

As the City contends, Plaintiff's tort claim contained only allegations of intentional acts taken because of Plaintiff's investigations. For example, it describes Lopez's acts as "implorable, unconscionable and unethical." The tort claim does not allege any acts of negligence, nor does it contain any allegations related to the City's duty to supervise its employees and/or help Plaintiff succeed. The tort claim therefore offered the City no information upon which to investigate a negligent hiring and/or negligent supervision claim. See Fall River Joint Unified School Dist. v. Superior Court, 206 Cal.App.3d 431, 435 (1988) (barring a cause of action that "patently attempts to premise liability on an entirely different factual basis than what was set forth in the tort claim.").

Plaintiff opposes summary judgment by first suggesting that the City waived the sufficiency defense by failing to issue a notice of insufficiency in response to his tort claim. A notice of insufficiency, however, is related to procedural insufficiencies. It is inconceivable that Plaintiff could expect the City to somehow anticipate the substantive issues that Plaintiff *could* have raised.

Alternatively, Plaintiff argues that his tort claim was sufficient because the negligence claim is simply an elaboration of the details contained in the tort claim. The claim does not, however, suggest any facts related to the City's alleged negligent supervision of Plaintiff or his supervisors.

Plaintiff also asks the Court to find that he substantially complied with Government Code section 910. "The test for substantial compliance is whether the face of the filed claim discloses sufficient information to enable the public entity to make an adequate investigation of the claim's

merits and settle it without the expense of litigation." Connelly v. County of Fresno, 146 Cal.App.4th 29, 38 (2006) (internal citations omitted).

Plaintiff points to the following portions as sufficient to notify the City of his claims: "Please accept this letter as a tort claim against the City of Orange Cove and its officers, in their official capacity," and "we are positioned for the City to decline it and we are prepared to litigate this case." Despite Plaintiff's characterization of this language as sufficiently detailed, it is nothing more than general language without a hint of a legal claim or supporting facts. Certainly, Plaintiff cannot have expected the City to adequately investigate the claim he now purports to assert.

    2.    *Workers' Compensation Exclusivity*

Defendant further argues that Plaintiff's negligence claims related to how he was supervised by the City are subject to workers' compensation exclusivity. Claims for acts occurring in the normal course of the employer-employee relationship, are barred by workers' compensation exclusivity principles. Livitsanos v. Superior Court, 2 Cal.4th 744 (1992); Coit Drapery Cleaners, Inc. v. Sequoia Ins. Co., 14 Cal.App.4th 1595, 1606 (1993) (claims against employer for negligent supervision barred by workers' compensation exclusivity). Defendant also points to Shoemaker v. Myers, 52 Cal.3d 1 25-26 (1990), where the court noted that issues of discipline and criticism are part of the normal employment relationship, and claims resulting from those issues are subject to workers' compensation exclusivity.

Plaintiff contends that his claims are not subject to workers' compensation exclusivity because the City's actions were in contravention to public policy and outside the compensation bargain. He suggests that intimidation to keep quiet regarding the employer's crimes cannot be said to be a normal part of the employment relationship. His negligence claim, however, sets forth allegations related to how he was supervised in terms of his performance. His allegations do not involve issues outside of the normal employment relationship and his claim is therefore subject to workers's compensation exclusivity.

For these reasons, the City is entitled to summary judgment on the seventh cause of action for negligence.

## **ORDER**

Based on the above, the Court GRANTS Defendant's motion for summary judgment.

IT IS SO ORDERED.

**Dated: February 1, 2010**          **/s/ Dennis L. Beck**
                                     UNITED STATES MAGISTRATE JUDGE